NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————
ANDRE BLACKMAN,           :
                                :
        Petitioner,       :
                                  :
    v.                    :       **OPINION**
                                  :
UNITED STATES OF AMERICA,    :       Civil Action No. 2:12-02509
                                  :
        Respondent.      :
                                  :
———————————————————  :

**MCNULTY, U.S.D.J.**:

      This matter comes before the Court upon the motion of Andre Blackman to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255.[1] The United States has filed a response to the motion. Pursuant to Fed. R. Civ. P. 78, upon review of all submissions, this matter is decided without oral argument. The motion is **DENIED**.

## I.    BACKGROUND

      On June 6, 2007, three officers of the Newark Police Department encountered Mr. Blackman while they were patrolling a residential area known to them as a location of frequent and extensive narcotic sales. While driving down the street, the officers heard a person warn others that the police were

———————————————

[1]     Blackman also seeks to recuse District Judge Cavanaugh, to whom this case was formerly assigned. (ECF No.1, Exs. B-C). That motion is denied as moot. The case was reassigned to me on March 11, 2014, after Judge Cavanaugh's retirement.

coming. Seeing the police cruiser and hearing the warning, Blackman fled. The officers, giving chase, saw Blackman remove a black plastic bag from his pants and throw it onto the ground. They also saw a gun tucked into the waistband of Blackman's pants, a gun later determined to be a loaded .40 caliber Smith & Wesson handgun. The bag thrown by Blackman turned out to contain smaller bags of marijuana.

The United States filed a one-count indictment against Blackman for being a convicted felon in possession of a handgun, in violation of 18 U.S.C. § 922(g)(1). John Yauch, Assistant Federal Public Defender, was first appointed to represent Blackman. On January 21, 2009, James C. Patton, Esq., was appointed to replace Yauch.

On June 12, 2009, after a two-day trial, a jury convicted Blackman. Blackman filed a post-trial motion, asking the Court (a) to set aside the jury's verdict and (b) to reconsider its prior ruling that the personnel files of the arresting officers were not Giglio material that the government was required to turn over to the defense. That post-trial motion was denied. On November 2, 2009, Blackman was sentenced to ten years of incarceration, followed by three years of supervised release. On January 25, 2011, the Third Circuit Court of Appeals affirmed Blackman's conviction. (3d Cir. Docket No. 09-4351; copy of decision at ECF No. 11, p. 27).[2] On April 25, 2012, Blackman filed this motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255. ("Pet.,"

---

[2]      When ECF docket items are cited, page numbers refer to the docket page numbers stamped at the top of the document by the ECF system.

ECF No. 1). The United States filed its Opposition on November 27, 2013 (ECF No. 11).

## II.   **STANDARD OF REVIEW**

Title 28, United States Code, Section 2255 permits a court to vacate, correct, or set aside a sentence "upon the ground that it was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the minimum authorized by law, or is otherwise subject to collateral attack."

Section 2255 may not, however, "be employed to relitigate questions which were raised and considered on direct appeal." United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (quoting Barton v. United States, 791 F.2d 265, 267 (2d Cir. 1986)). If a claim was not raised on direct appeal, it "may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003). That is, "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his ... procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 167-68 (1982).

A major exception to that cause-and-prejudice rule, however, is a claim of ineffective assistance of counsel. Such a claim is not best entertained on direct appeal; it will ordinarily and preferably be heard in collateral

3

proceedings. See Massaro, supra; United States v. Sandini, 888 F.2d 300, 311-312 (3d Cir.1989).

An evidentiary hearing will be granted as to material contested factual issues, but will not be granted if "the motion, files and records of the case conclusively show that the prisoner is not entitled to relief . . . ." 28 U.S.C. § 2255. Where the record affirmatively refutes a claim, refusal to hold an evidentiary hearing will not be deemed an abuse of discretion. See Page v. United States, 462 F.2d 932, 933 (3d Cir. 1972). Bald, unsupported assertions or conclusory allegations will not suffice to require a hearing. See Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010); Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987). And of course factual allegations will not require a hearing when, even if proven, they would not entitle the defendant to relief. See Gov't of Virgin Islands v. Weatherwax, 20 F.3d 572, 574 (3d Cir. 1994).

Finally, in reviewing this matter, I am mindful throughout that the papers of a pro se litigant are held to less demanding standards than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972); United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007).

## III.   DISCUSSION

Section III.A, below, discusses Blackman's various claims of ineffective assistance of counsel (Claims 1, 2, 4, 5, 7, 8, 9, 10, and 11). Part B discusses his Brady/Giglio claim that the government failed to provide required discovery

(Claim 3). Part C discusses his constitutional challenge to the felon-in-possession statute under which he was convicted (Claim 6).

## A. Ineffective Assistance of Counsel Claims

Blackman makes a number of claims of ineffective assistance of counsel. To prevail on such a claim, Blackman must demonstrate

> *First,* ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
>
> *Second,* the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984) (line break added).

Under the deficient-performance prong, the review of counsel's strategy decisions is "highly deferential," Strickland, 466 U.S. at 689. The court will indulge a presumption that counsel rendered reasonable professional assistance. Kimmelman v. Morrison, 477 U.S. 365, 386 (1986).

Under the prejudice prong, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . ." Rainey v. Varner, 603 F.3d 189, 197–98 (3d Cir. 2010) (quoting Strickland, 466 U.S. at 694). The question, viewed in light of all the evidence, is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial

cannot be relied on as having produced a just result." <u>Ross v. Varano</u>, 712 F.3d 784, 797–98 (3d Cir. 2013) (quoting <u>Strickland</u>, 466 U.S. at 686)).

    *1. Claim 1: Ineffective assistance as to first (Yauch) plea offer*

    In his first claim, Blackman argues that his first counsel, Mr. Yauch, rendered ineffective assistance of counsel because "as a result of [Yauch's] unprofessional conduct, [Blackman] did not understand the plea that was offer[ed] to him that would have resulted in a less harsh sentence" (Motion at 4). The problem, says Blackman, was that Yauch did not investigate the case before presenting the plea offer to him, and he did not want to sign the agreement "blind." <u>Id</u>. Blackman argues that if Yauch had first investigated the facts and *then* "explain[ed] the pros and cons" of the plea agreement, Blackman would likely have accepted it. And he would have accepted it despite his innocence of the offense, the evidence of which was "fabricated by the corrupt officer." <u>Id</u>. According to Blackman, Yauch advised him that "it was me against them, and the jury, even if [Blackman's version were] true would believe[] the officers." <u>Id</u>.

    When a defendant claims that, as a result of ineffective assistance of counsel, he rejected a plea offer and went to trial, the usual <u>Strickland</u> requirements of deficient performance and prejudice apply. In this context, the required showing of prejudice is daunting:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would

6

not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012). See also Rickard v. United States, No. 10-4089, 2011 WL 3610413, at *8 (D.N.J. Aug. 16, 2011) ( "a defendant claiming ineffective assistance of counsel may show prejudice if he can show that but for his counsel's advice, he would have accepted the plea and that a plea agreement would have resulted in a lesser sentence").[3]

Here, Blackman does not proffer evidence, or even a sufficient specific allegation, of prejudice. Prejudice cannot be inferred, for a number of reasons.

First, the claim that Yauch's "investigation" of the case would have led Blackman to accept the plea offer cannot be reconciled with Blackman's steadfast protestations of innocence. Blackman claims that a proper investigation, if Yauch had conducted it, would have revealed that the whole case was a police frame-up. It is hard to see, then, how a proper investigation would have inclined Blackman to plead guilty. More generally, Blackman has always maintained that the case against him was a complete fabrication. Thus,

---

[3]    The claimed prejudice here is that the defendant would have opted to plead guilty and forgo a trial. The required showing of prejudice, however, is tailored to the context. Thus, for example, where a defendant has accepted a disadvantageous guilty plea, he may be required to show that, with proper legal advice, he *would* have gone to trial. See Hill v. Lockhart, 474 U.S. 52 (1985) (petitioner who entered guilty plea based on allegedly erroneous advice). Or the defendant may be required to show that, with proper legal advice, he would have obtained a better plea deal than the one he got. See Missouri v. Frye, 132 S. Ct. 1399 (2012) (counsel's failure to communicate plea offer, which then lapsed, leading to defendant's acceptance of later, less favorable offer).

even assuming (for purposes of argument only) that Yauch's representation was ineffective, Blackman was not prejudiced in the sense of being induced to turn down a meritorious plea offer. Boiled down, his claim is that, with proper advice, he would have entered an untruthful plea of guilty. But that was never the plea offer; the plea offer entailed an admission of guilt, not a misrepresentation to the Court.[4] Loss of such an "opportunity" is not cognizable prejudice.

Second, Blackman does not establish that Yauch's errors, if any, prejudiced his position in plea negotiations. Blackman *again* elected to go to trial after Yauch was replaced by new counsel, Patton. Patton, Blackman concedes, retained an investigator, who explored the facts of the case. That investigator Blackman praises as "very motivated, inquisitive, helpful, resourceful, respectful and totally against what the Newark Police Department had in the Police Report and Radio transmission(s)." Blackman Aff. ¶ 11.[5] Armed with the results of that investigation, Patton discussed with his client a second plea offer. That second offer, according to Blackman, differed from the first by only one offense level: the first plea offer (to Yauch) contained a 3-point reduction for timely acceptance of responsibility, but the second plea offer (to

---

[4]      The Court takes judicial notice that an *Alford* plea, or even a plea of *nolo contendere,* is rare, if not totally unheard of, in this District. The defendant is almost always required to establish a Rule 11 factual basis for the plea *via* his own admissions on the record. At any rate, Blackman does not allege that this was anything other than a standard plea agreement, requiring a confession of guilt.
[5]      Blackman faults the investigation in one respect—failure to obtain GPS records—but that, as discussed below, is not a valid criticism.

Patton) entailed only a 2-point reduction.[6] Blackman Aff. ¶ 13.  That second
offer, then, was at worst marginally less favorable. (For adjoining offense levels,
the sentencing ranges overlap by about one half of their length. *See* U.S.S.G.,
Sentencing Table.) Blackman, however, makes it clear that this one-point
discrepancy was *not* his reason for rejecting the second offer, and he does not
claim that he ever instructed Patton to negotiate for the third point. Rather,
Blackman says, he decided to reject the plea offer and go to trial because he
and Patton, after proper investigation of the case, believed they could prevail.
Blackman Aff. ¶ 14.

It is worthwhile to pause and recall that Blackman's claim of prejudice
here is that a proper investigation, if performed by Yauch, would have induced
him to *accept* the first plea offer. But that investigation was performed by
Patton's investigator, and a second, similar plea offer was on the table. That
investigation seems to have been the very thing that emboldened Blackman to
*reject* the second plea offer.

For the same reason, this Court also rejects the request of
Blackman—who still maintains that he was framed— for an evidentiary hearing
regarding his rejection of the first plea offer. See Engelen v. United States, 68
F.3d 238, 241 (8th Cir. 1995) ("The record is completely barren of any evidence
that [the petitioner] would have acknowledged his guilt prior to trial. [The

---

6       Blackman is referring to a 2-point reduction for acceptance of responsibility
under U.S.S.G. § 3E1.1(a) and an additional 1-point reduction for timely acceptance
under § 3E1.1(b). One or both are commonly awarded when a defendant pleads guilty.

petitioner] testified at the trial and maintained his innocence of the crimes alleged."). I take Blackman's allegations at face value, but in context and in light of the record. They do not entitle him to relief on Claim 1.

   2. *Claim 2: Ineffective assistance as to GPS records*

   In his second claim, Blackman argues that Patton rendered ineffective assistance because he did not subpoena the Global Position System ("GPS") records of the radios held by each of the arresting officers. If this evidence had been obtained, he says, "the jury would have been convinced that the Government's version of the offense is not in tune with the undispute[d] technological evidence . . . of the actual position of the officers" (Motion at 5). Blackman fails to demonstrate that such evidence exists, and fails to show how such evidence would tend to prove his innocence.

   The offense of which Blackman was convicted had three elements: (1) a prior felony conviction; (2) knowing possession of a firearm; (3) in or affecting interstate commerce. United States v. Dodd, 225 F.3d 340, 344 (3d Cir. 2000); *see* 18 U.S.C. § 922(g)(1). The existence of the felony conviction was stipulated; the gun was in evidence; and its transportation across interstate lines was virtually a foregone conclusion. The central issue to be tried was Blackman's knowing possession of the weapon. As to that, the police officers testified that they saw the butt of the gun protruding from Blackman's waistband and seized it from him in the course of the arrest. Blackman contends that the officers "planted the evidence (firearm and marijuana)." Blackman Aff. ¶ 3. As the Third

Circuit found on direct appeal, despite vigorous cross-examination of the officers, "there was ample evidence for the District Court to conclude that Blackman illegally possessed a firearm." United States v. Blackman, 407 F. App'x 591, 594 (3d Cir. 2011).

This claim of ineffective assistance is based on counsel's failure to subpoena GPS records showing the location of the officers (or rather, the location of their radios or patrol cars). Even as to the initial, deficient-performance prong of Strickland, I am doubtful. There is no showing that such evidence exists, that counsel knew or should have known of its existence, or that reasonable counsel would have perceived its significance. And evidence of the second Strickland prejudice prong is utterly lacking. First, the evidence of guilt was strong, and clearly was accepted by the jury. This hypothetical GPS evidence, even if it existed, would show the location of the officers' electronic equipment, not the officers themselves. Anyway, no one disputed that the officers were in the area of the arrest. The only issue was whether the seized gun was in Blackman's waistband or planted on him by the officers. On that factual issue, the GPS evidence would shed no light.

The Section 2255 motion is denied as to Claim 3.

11

### 3. *Claims 4 & 5: Ineffective assistance as to failure to testify*

In his fourth and fifth claims, Blackman contends that Patton was ineffective because he "prevented" Blackman from testifying.[7] That "prevention" consisted of counsel's advice that Blackman should not testify because he would be impeached with his prior criminal history, which included four felony convictions. (Motion at 10) This advice, or "strategy," says Blackman, was faulty; he claims that if he had testified, the jury would have heard the "real version of the facts." (Id. at 9, 10).

There is no doubt that a defendant has the absolute right to testify, or not to testify.  See United States v. Pennycooke, 65 F.3d 9, 10 (3rd Cir. 1995) (citing authorities). And the decision whether to testify is perhaps the most sensitive tactical decision in a criminal case.

It is hard to fault Patton's advice here. If Blackman had testified, it is certain that he would have been impeached with his lengthy criminal record. See generally Fed. R. Evid. 609. That record included four felony convictions: possession of CDS (marijuana) with intent to distribute within 1000 feet of school property; possession of CDS (cocaine) with intent to distribute; conspiracy to commit theft (auto); unlawful possession of a weapon (stolen 9 mm handgun). PSR ¶¶ 30-40. Because Blackman did not testify, the jury

---

[7]      In the alternative, Blackman faults counsel for failing to get his version of the facts before the jury in the form of an affidavit or stipulation. Factual testimony by affidavit would constitute inadmissible hearsay. *See generally* Fed. R. Evid. 801, 802. And there is no possibility that the government would have stipulated to Blackman's frame-up theory.

learned only that he had previously been convicted of one unspecified offense punishable by more than one year of imprisonment. (The parties stipulated to existence of a prior felony conviction, but not its nature, to satisfy the prior-felony element of the offense of conviction, 18 U.S.C. § 922(g)(1). See Old Chief v. United States, 519 U.S. 172 (1997).

Blackman's story, moreover, was not calculated to convince. He claimed, then as now, that he had been walking down the street when the police officers arrested him for no reason, then produced the gun and marijuana and told Blackman they had found it in his possession. Blackman Aff. ¶¶ 4-5. Some version of this scenario was pressed in cross-examination of the multiple police witnesses, but it obviously failed to convince the jury. The Third Circuit upheld the conviction against a sufficiency-of-the-evidence challenge. United States v. Blackman, 407 F. App'x at 594.

In short, Blackman fails to demonstrate, or even allege convincingly, that Patton gave deficient advice, that he would have testified if Patton gave different advice, or that there is a reasonable probability that the outcome of the trial would have been different if he had testified.

#### 4. Claim 7: Ineffective assistance as to "actual innocence"

In his seventh claim, Blackman asserts that Patton was ineffective because Blackman is "actually innocent."[8] The Supreme Court has stated that "[t]o be credible, [a claim of actual innocence] requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). See Hubbard v. Pinchak, 378 F.3d 333, 339 (3d Cir. 2004).

Blackman does not offer any new evidence. He asserts, as he has all along, that the police fabricated the entire sequence of events leading to his conviction. This is nothing more than an attempt to reargue the case he presented at trial. I note also that the United States Court of Appeals for the Third Circuit upheld the denial of his motion for a judgment of acquittal. United States v. Blackman, 407 F. App'x at 594. Blackman's burden on that motion was to demonstrate that no rational jury could have convicted. See, e.g., Jackson v. Virginia, 443 U.S. 307, 318 (1979). Heavy as that burden may have been, it was still less onerous than his burden here under Schlup.

Blackman offers nothing that even approaches the threshold for demonstrating "actual innocence." On this ground, too, the Section 2255 motion is denied.

---

8   This need not, and probably should not, be viewed as an ineffective assistance claim. It is a residual ground for habeas or Section 2255 relief that does not necessarily implicate counsel's performance.

### 5. *Claim 8: Ineffective assistance as to speedy trial*

In his eighth claim, Blackman argues that Patton was ineffective because his conviction "was obtained in violation of the statutory and constitutional right to speedy trial" (Pet. at 12). Blackman asserts, without elaboration, that the state charges that preceded the federal charges were a "ruse."

Blackman does not present evidence or allege a single fact to support this theory. He fails to set forth even the rudiments of a violation of the constitutional or statutory guarantee of a speedy trial. See 18 U.S.C. § 3161 et seq.; Barker v. Wingo, 407 U.S. 514 (1972) (Sixth Amendment analysis). Still less does he demonstrate that Patton's failure to recognize or press such a claim constituted ineffective assistance of counsel. And Blackman fails to show or even specifically allege prejudice: i.e., that, even if he were right about the speedy trial violation, the outcome of his case would have been different. For example, Blackman fails to demonstrate that the case would have reached a different result if it had been tried sooner; that a speedy trial claim would have succeeded; that if it succeeded the case would have been dismissed with prejudice; that, if the case were dismissed without prejudice, as is more common, he would not have been re-indicted; that if he were re-indicted, the case would have followed a different course; and so on.

On this ground, too, the Section 2255 motion will be denied.

15

6. *Claim 9: Ineffective assistance as to second (Patton) plea offer*

In his ninth claim, Blackman asserts that Patton was ineffective because he did not advise Blackman to accept the second plea agreement that was offered to him by the Government. Many of the considerations governing Claim 1 apply here as well. See Section III.A.1, supra.

The facts, even in Blackman's version, fail to suggest that he would or could have accepted the plea offer. A plea of guilty would have required an admission of guilt, which Blackman was and is unwilling to make. There is a presumption that an attorney's advice to forgo a plea and go to trial is a sound strategic decision. See Lewis v. Mazurkiewicz, 915 F.2d 106, 114–15 (3d Cir. 1990) (under Strickland, "courts should allow very broad latitude for strategic choices made after adequate investigation" and finding that counsel's advice to enter a guilty plea and forgo trial by jury did not violate constitutional requirements); United States v. Berry, 2000 WL 1886603 (E.D. Pa. Dec. 6, 2000). Blackman has failed to proffer facts or evidence that would rebut such a presumption. Blackman second-guesses counsel's advice, but the decision or advice to go to trial is not judged in hindsight; if it were, every defendant convicted at trial would have a basis for Section 2255 relief. In other words, even an incorrect prediction is not necessarily deficient performance. A defendant must state why the attorney's advice fell outside the broad range of professional acceptability. That Blackman has not done.

16

A fortiori, counsel's acquiescence in a client's insistence on "rolling the dice" cannot be faulted. Ultimately, the decision was Blackman's. He maintained his innocence and believed he had a good chance to prevail. He does not dispute that he was aware of the risks attendant on a trial. Having been convicted, he now "regrets" forgoing the plea. Blackman Aff. ¶¶ 14. Such regrets, however understandable, are not the stuff of Section 2255 relief.

Blackman fails to show, or even allege with specificity, the manner in which his rejection of the second plea offer resulted from deficient attorney performance. He has failed to demonstrate or allege specifically why there is a reasonable probability that he would have pleaded guilty. And the record is strongly to the contrary.

Section 2255 relief is rejected as to Claim 9.

### 7. Claim 10: Ineffective assistance as to sentencing adjustment

In his tenth claim, Blackman argues that Patton was ineffective because he "allowed the Court to impose a four level enhancement under U.S.S.G. § 2K2.1(b)(6), for committing the instant offense in connection with another felony." (Motion at 13). The other felony was the possession with intent to distribute the marijuana, which Blackman contends was not his, but was planted on him by the police. (Id.; see PSR ¶ 13). Blackman argues further that, even if the marijuana did belong to him, there is no evidence that he intended to distribute it. The government had the burden to support the imposition of this upward adjustment by a preponderance, although the Court

17

was not bound by the Federal Rules of Evidence in making its determination. U.S.S.G. § 6A1.3 and Comment; <u>United States v. McDowell</u>, 888 F.2d 285, 290-91 (3d Cir. 1989).

Whatever else this may be, it is not ineffective assistance of counsel. At sentencing, Patton made, in substance, the argument that Blackman makes here. ECF No. 11 at pp. 42-43.[9] He was not "ineffective" merely because he failed to prevail.

At any rate, there was an ample evidentiary basis for imposing the adjustment. There was ample evidence that Blackman threw away the bag of marijuana as he fled. The Court was entitled to credit that trial testimony and reject the defendant's police frame-up theory. Blackman cites the absence of fingerprint evidence, but the bag was never analyzed for fingerprints. The notion that the officers planted the marijuana on him was part and parcel of the frame-up theory that the jury obviously rejected.

The amount of marijuana was concededly small (approximately 22 grams) and theoretically consistent with personal use. Blackman himself, however, stated to the Probation Office that he had not used marijuana

---

[9]    More precisely, Patton argued for a downward variance that would dispense with the four-point upward adjustment because the marijuana was for personal use, not distribution. He did not specifically, in this connection, revive the well-worn argument that the police had planted the gun and drugs, but the Court was thoroughly familiar with that contention.

This sentencing adjustment, challenged indirectly via an ineffective assistance claim, cannot be challenged directly. Blackman did not assert this issue on direct appeal, and has not shown "cause and prejudice" that would excuse his procedural default. <u>See</u> p. 3, <u>supra</u>.

personally since he was 17 years old. The marijuana was packaged for resale in twelve Ziploc bags and six smaller bags. Blackman had $450 in cash in his pocket at the time of arrest. Id. at pp. 43-45; PSR ¶¶ 7-12. The sentencing court was entitled to infer a felonious intent to distribute.

Blackman's argument was properly rejected, and the court's rejection of it certainly cannot be attributed to any deficient performance by counsel.

   8. *Claim 11: Ineffective assistance as to criminal history in PSR*

Finally, in his eleventh claim, Blackman argues that Patton was ineffective because for sentencing purposes his Criminal History Category should have been IV, not V.

First, Blackman challenges PSR ¶ 43, which added 2 points for a conviction of hindering apprehension, for which he received a sentence of 180 days' imprisonment. Under the Guidelines, however, this was correct. U.S.S.G. § 4A1.1(b) (add 2 points for each prior sentence of imprisonment of at least sixty days [but not exceeding one year and one month, see id. § 4A1.1(a)]).[10]

Second, Blackman refers to U.S.S.G. § 4A1.1(d), the application of which resulted in the addition of two points because he committed the offense of conviction while he was on probation. See PSR ¶ 44. Blackman claims that this section was abrogated by an amendment, but it was not. There is no error.

The government suggests that Blackman may be referring to a one-point enhancement for commission of this offense within two years of release from

---

[10]     Blackman refers to exceeding the 4-point maximum of U.S.S.G. § 4A1.1(c), but that maximum applies only to sentences "*not* counted in (a) or (b)." (Emphasis added.)

custody for a prior conviction, pursuant to U.S.S.G. § 4A1.1(e). See PSR ¶ 44. Section 4A1.1(e) was subsequently abrogated by Sentencing Guidelines Amendment 742. That amendment, however, does not apply retroactively to sentences already imposed. See U.S.S.G. § 1B1.10(c) (exclusive list of retroactive amendments); United States v. Wayne, 516 F. App'x 135, 137-38 (3d Cir. 2013) (Amendment 742 not retroactive); see generally 18 U.S.C. § 3582(c)(2).

The criminal history calculation was not erroneous, and so cannot give rise to Section 2255 relief.

In sum, all of the claims of ineffective assistance—Claims 1, 2, 4, 5, 7, 8, 9, 10, and 11—are rejected.

### B. Claim 3: Brady/Giglio Violations

In Claim 3, Blackman asserts that the government's failure to turn over the GPS records violated its duty to disclosure exculpatory material under Brady v. Maryland, 373 U.S. 83 (1963). This is a recasting of Claim 2, supra, in which he faulted counsel for failing to subpoena the same records. As discussed above, Blackman has made no showing that the GPS records exist, let alone that they would exculpate him. For the reasons stated above, there is no basis even to speculate that those records would tend to negate Blackman's possession of the firearm.

Blackman further claims that the Government failed to turn over material that could have been used to impeach the police witnesses, in

20

violation of <u>Giglio v. United States</u>, 405 U.S. 150 (1972). The government submitted evidence of civil suits and grievances filed against the arresting officers for *in camera* inspection by the district court. The court reviewed those files and ruled that the Government did not have to produce them, because they did not tend to impeach the officers' truthfulness. The United States Court of Appeals for the Third Circuit reviewed the materials and, applying an abuse of discretion standard, upheld that ruling on direct appeal. <u>United States v. Blackman</u>, 407 F. App'x at 596 (citing <u>United States v. Dent</u>, 149 F.3d 180, 191 (3d Cir. 1998)). Because Blackman offers nothing new, the prior ruling of this Court, affirmed by the Third Circuit, disposes of the matter.

Finally, Blackman argues that the Government violated <u>Brady</u> by not disclosing the results of fingerprint analysis of the bag containing the marijuana that was seized at the time of his arrest. Blackman concedes that the government witnesses testified that they did not send the bag for a fingerprint analysis. He offers no evidence, beyond his own unsupported say-so, that such an analysis ever took place. There was no fingerprint analysis to disclose, and hence no violation of <u>Brady</u>.

Claim 3, the <u>Brady</u>/<u>Giglio</u> claim, is denied.

## C. Claim 6: Facial Unconstitutionality of 18 U.S.C. § 922(g)

In his sixth claim, Blackman argues that 18 U.S.C. § 922(g)(1), the statute under which he was convicted, is unconstitutional. As stated above, the statute proscribes the possession of a firearm by a person who has previously

been convicted of a felony. Blackman objects "[b]ecause [he] was prevented from testify[ing by] virtue of being a felon and that information was introduced to the jury anyway." (Motion at 11)

This claim was not raised at trial or on direct appeal. Consequently, this Court cannot consider it unless Blackman shows "cause and prejudice," *i.e.*, good cause for the procedural default, and prejudice resulting from the claimed error. See p. 3, supra. Blackman has not even attempted to make such a showing, and his claim may be rejected on that ground alone.

At any rate, the constitutional challenge must be rejected. For the felon-in-possession statute, defendant's prior felony conviction is, of course, an element to be proven. In this case, that element was proven in the least inflammatory manner possible. The parties stipulated as follows:

> It is hereby simulated and agreed ... that Andre Blackman was convicted of a crime punishable by imprisonment for a term exceeding one year in a court in the State of New Jersey prior to June 6, 2007.

(ECF No. 11 at p. 63). Nothing about the nature or circumstances of the felony was revealed. And the jury never heard that Blackman had not one, but four, felony convictions on his record.[11]

As a result, Blackman cannot show that any unfairness arose in *his* case. As he concedes, he refrained from testifying so that the jury would not

---

[11]    Such stipulations have been common since the Supreme Court decision of Old Chief v. United States, 519 U.S. 172 (1997) (in 922(g) case, it was an abuse of discretion to reject defendant's offer to stipulate to existence of prior felony conviction, because probative value of further details about the prior offense was outweighed by the prejudice to defendant under Rule 403, Fed. R. Evid.).

22

hear him impeached by his four prior convictions for drug, weapons, and theft offenses. Proof of the prior-felony element exposed the jury to, at worst, a highly sanitized version of that: the mere fact of a single felony conviction, without further description. Thus Blackman exaggerates greatly when he contends that the felon-in-possession statute, by its nature, destroyed the value of his decision not to testify.

Any general, facial challenge to the felon-in-possession statute based on the supposed unfairness of revealing the defendant's felon status to the jury—assuming arguendo that Blackman could now assert such a challenge—would also fail. Research has failed to uncover any case holding that proof of this element at trial is in itself unfair, especially where—as here—the court has adopted procedures to minimize the impact of the prior conviction. The case law that exists suggests strongly that no such challenge could be maintained. See generally Old Chief, supra; United States v. Fields, 507 F. App'x 144, 148 (3d Cir. 2012), cert. denied, 133 S. Ct. 1292 (2013) (holding that defendant was not entitled to bifurcation of element of possession from element of prior conviction, reasoning that "any prejudice from the jury learning of the fact of a prior felony can be mitigated by appropriate cautionary instructions"); United States v. Higdon, 638 F.3d 233, 243 (3d Cir. 2011) (reasoning that "failing to instruct the jury about the prior felony element of the § 922(g)(1) offense would have the impermissible effect of allowing the district court to modify a

congressionally enacted criminal statute by eliminating an element of the crime through stipulation").

As to Claim 6, too, the motion is denied.

## IV.   CONCLUSION & DENIAL OF CERTIFICATE OF APPEALABILITY

For the reasons stated above, Blackman's motion to vacate, correct or set aside sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

For the reasons expressed above, Blackman has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (required showing is that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"). A certificate of appealability is therefore **DENIED**.

An appropriate Order accompanies this Opinion.

Dated: March 21, 2014

_____
Kevin McNulty, U.S.D.J.